**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING**

**EDWARD NESTOR,**

|  |  |
|---|---|
| **Plaintiff,** | **Civil Action No. 5:25-cv-147** |
| **v.** | **Judge John Preston Bailey** |

**CREDIT ACCEPTANCE CORPORATION,**

**Defendant,**
**and**

**CREDIT ACCEPTANCE CORPORATION,**

**Third-Party Plaintiff,**

**v.**

**EDWIN LINARES RIVERA,**

**Third-Party Defendant.**

**MEMORANDUM OF LAW IN SUPPORT OF CREDIT ACCEPTANCE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Defendant and Third-Party Plaintiff Credit Acceptance Corporation ("Credit Acceptance"), by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum of Law in Support of its Motion for Summary Judgment on the two claims plaintiff Edward Nestor ("Plaintiff") asserts against it.

Credit Acceptance is being sued for credit reporting that it provided regarding an account for Edwin Linares Rivera ("Rivera"), which reporting was accurate and completely positive. More specifically, Rivera purchased a vehicle from a dealership, and that dealership then assigned Rivera's contract to Credit Acceptance. Rivera then made all payments on time and in the correct amount. Accordingly, Credit Acceptance reported that Rivera paid his account as agreed, and after he made the last payment in 2018, that account closed.

Five years later, Plaintiff made a dispute, claiming that Rivera had stolen his identity and, in support of that dispute, submitted documents that were illegible. Credit Acceptance investigated that dispute and determined that the information it reported about Rivera – that he made all payments on time and in the correct amount – was accurate. Accordingly, it did not change anything it reported about Rivera.

Now, Plaintiff is suing Credit Acceptance, claiming that Rivera stole his Social Security Number and that Credit Acceptance's reporting appeared not only on Rivera's credit report but also on Plaintiff's. Regardless, the critical question is whether Credit Acceptance conducted an investigation of Plaintiff's dispute that was more than just a cursory review of its internal documents. It did. That is fatal to Plaintiff's claims. Further, Plaintiff lacks standing to bring his claim because he cannot establish that he suffered an injury-in-fact resulting from Credit Acceptance's alleged conduct. This is particularly true when Credit Acceptance's alleged conduct reported completely positive credit information, while Plaintiff's credit report shows other reporting around the same time period involving an account that has been turned over to a collection attorney, an account that is in collections, and possibly the repossession of an automobile.

For these reasons, Plaintiff's claims fail as a matter of law, and Credit Acceptance is entitled to summary judgment on those claims.

**STATEMENT OF FACTS**

On May 20, 2014, Rivera purchased a 2008 Honda Accord ("Vehicle") from High Quality Motors LLC (the "Dealership"). Affidavit of Carryn Walker ¶ 3 ("Walker Aff."), attached hereto as Exhibit A. No one from Credit Acceptance sold the Vehicle to Rivera. *Id*. No one from Credit

2

Acceptance worked at the Dealership.  *Id.*  No one from Credit Acceptance negotiated any of the terms of the Contract.  *Id.* In short, it was not involved in selling the Vehicle to him. *Id.*

In connection with purchasing the Vehicle, Rivera executed a Retail Installment Contract and Security Agreement ("Contract").  *Id.* at ¶ 3 and Exhibit A-1. After the sale was consummated, Credit Acceptance accepted assignment of the Contract from the Dealership and assumed all of the Dealership's right, title, and interest in and to the Contract.  *Id.* at ¶ 4.

Rivera was a model customer.  *Id.* at ¶ 5 and Exhibit A-2. He made every payment timely and in the correct amount. *Id.* Because he made every payment timely and in the correct amount, Credit Acceptance reported to the major credit reporting agencies that he paid as agreed on his account. *Id.* It never reported any negative information on Rivera's account.  *Id.*  On July 27, 2018, Rivera made his last payment, and Credit Acceptance thereafter released its lien on the Vehicle. *Id.* at ¶ 6.

Credit Acceptance did not hear anything further about Rivera's account for five years. *Id.* at ¶¶ 6 and 7.  On July 19, 2023, Credit Acceptance received a credit reporting dispute from Equifax Information Services LLC ("Equifax").  *Id.* at ¶ 8 and Exhibit A-4. It advised that an individual named Edward Nestor was disputing an account that he claimed appeared on his credit report on which he claimed Credit Acceptance was furnishing information about him. *Id.* at ¶ 9. The documents provided with the dispute appeared to be a West Virginia driver's license, a Social Security card, and a document that appeared to bear the seal of the State of West Virginia.  *Id.* However, those documents were horribly illegible.  *Id.*  The photograph of the individual on the driver's license was blacked out.  *Id.*  The name of the individual and all biographical information about that individual on the driver's license also were blacked out.  *Id.*  The Social Security number on the Social Security card was blacked out.  *Id.*  All that was readable on the Social Security card

was the first name "Edward," the last name "Nestor," and the part of the individual's signature that read "Eddie." *Id*. The last document showed the name "Edward William Nestor," but did not show any other information. *Id*.

In short, the documents that were submitted with the dispute were suspect, especially in the face of an account that did not relate anywhere to the names "Edward," "Eddie," or "Nestor," and on which all payments were made timely and in the correct amount.

In response to receiving the dispute, Credit Acceptance searched for an account with either "Edward Nestor" or "Eddie Nestor" as the obligor and did not find one. *Id.* at ¶ 10. Credit Acceptance reviewed the account belonging to Rivera and saw that it did not bear any of the usual hallmarks of identity theft. *Id.* What Credit Acceptance expected to see, if it were an account involving identity theft, would be a purchase of the vehicle and little to no payments made thereafter, such that the thief was able to abscond with the vehicle without paying for it. *Id*. What Credit Acceptance saw was the exact opposite.  Rivera's account showed that he had made every payment timely and in the correct amount. *Id.* at ¶ 5, Exhibit A-2. Credit Acceptance also could not see any connection in the Rivera file to Plaintiff.  *Id.* at ¶ 10.  His name is not mentioned anywhere in the account. *Id*.

Rather, he appeared to be a stranger to that account. Because he was a stranger to that account, Credit Acceptance was prohibited from disclosing any information about the account to him.  15 U.S.C. § 1692c(b); W. Va. Code § 46A-2-126(c).  Thus, Credit Acceptance did the one thing it could do.  It attempted to contact Rivera about the dispute. Exhibit A-3. Credit Acceptance attempted to telephone Rivera, but he did not answer.  Exhibit A-3. Credit Acceptance left a message for him, asking that he return the call. Exhibit A-3. However, Rivera did not return that call. Exhibit A-3. Further, as noted above, Credit Acceptance was unable to review the documents

4

attached to the dispute because they were illegible. Exhibit A-4. Thus, Credit Acceptance concluded the only thing that it could conclude, that the information it reported – that Rivera made every payment on time and in the correct amount – was accurate.

On September 19, 2023, Credit Acceptance received a letter from Plaintiff. *Id.* at ¶ 11, Exhibit A-5. This letter requested the following information: "(1) A copy of my entire File with your company; (2) All applications you received; (3) all credit files you viewed for me; (4) Documentation showing your decision; and (5) The complete loan agreement and loan package you have for any account in my name." *Id.* Attached to this letter was a copy of Plaintiff's driver's license and Social Security card. *Id.* Credit Acceptance provided the information that Plaintiff requested and, because Plaintiff was a stranger to the account, mailed that information to the last confirmed address on the account. Exhibit A-6.

Plaintiff now has sued, not Rivera, but Credit Acceptance. In his Complaint, Plaintiff asserts claims for alleged violations of the Fair Credit Report Act ("FRCA") against Equifax and Credit Acceptance. ECF No. 1, Complaint ("Compl.") at ¶ 1. Specifically, Plaintiff asserts claims against Credit Acceptance for alleged violations of 15 U.S.C. § 1681(s)-2(b)(1)(A) and U.S.C. § 1681s-2(b)(1)(E). *Id.* at ¶ 110, 118.

Plaintiff alleges that he discovered that his identity had been stolen, and that his personal information was used to open accounts with at least the following entities: Chase, Synchrony, Credit Acceptance, Westlake, and CarMax. *Id.* at ¶ 33. Plaintiff claims that he has never applied for any of those accounts and has never authorized or signed applications for them. *Id.* at ¶ 34. Plaintiff alleges that he sent correspondence to Equifax requesting that Equifax verify and correct the inaccurate information appearing on his credit file, i*d.* at ¶ 40, and that he also sent correspondence directly to Chase, Synchrony, Credit Acceptance, Westlake, and CarMax

requesting that they verify and correct the inaccurate information appearing on his credit file. *Id.* at ¶ 47. Plaintiff claims that Credit Acceptance failed to reasonably investigate his dispute after it received that dispute from Equifax in violation of FRCA. *Id.* at ¶ 54.

Plaintiff alleges that FRCA requires that "after receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information." *Id.* at ¶ 110. Further, Plaintiff alleges that FRCA provides that if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, the furnisher must modify, delete, or block that information. *Id.* at ¶ 119.

## LEGAL STANDARD

This Court has described the standard for analyzing summary judgment motion as follows:

> Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also News & Observer Publ'g Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir.2010) (same).

> When examining the record, the court must neither resolve disputes of material fact nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir.1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.1986). Inferences that are "drawn from the underlying facts," if any "must be viewed in the light most favorable to the party opposing" it. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991).

*EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 589 (S.D.W. Va. 2016), *aff'd,* 870 F.3d 322 (4th Cir. 2017).

## DISCUSSION

**I.    Credit Acceptance Did Not Violate FCRA, as a Reasonable Investigation Was Conducted.**

Plaintiff alleges that Credit Acceptance violated 15 U.S.C. § 1681s-2(b)(1)(A). Compl. at ¶ 110. That statute requires, after receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information. 15 U.S.C. § 1681s-2(b)(1)(A).

To prevail on this claim, Plaintiff must show all of the following elements: (1) he submitted a dispute over the accuracy of information on his credit report to a consumer agency; (2) the agency notified the furnisher of the credit information of that dispute; and (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified. *Roberts v. Care-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025). For a defendant to be granted summary judgment on this claim, it must establish that there is an absence of evidence to support one of the three elements or that its investigation was reasonable as a matter of law. *Timms v. USAA Federal Savings Bank*, 2020 WL 12618897, at *8 (D.S.C. 2020).

"To satisfy the reasonable investigation standard, a data furnisher must conduct a searching inquiry into the dispute." *Jones v. Experian Information Systems, Inc., et al.*, 2012 WL 2905089, at *4 (E.D. Va. 2012). Such an investigation requires the data furnisher to go beyond a cursory review of internal records and conduct an investigation that is more than merely superficial. *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

Plaintiff alleges that Credit Acceptance "failed to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes were furnished to Credit Acceptance by Equifax." Compl. at ¶ 111. The Court does not need to decide any issues regarding the notice of Plaintiff's

dispute because Plaintiff cannot show that Credit Acceptance failed to reasonably investigate that dispute, and his failure is fatal to his claims.

As stated above, Credit Acceptance investigated Plaintiff's dispute. However, the account that Plaintiff was referring to was not connected to his name whatsoever in the Credit Acceptance system.  Put another way, Plaintiff's name did not appear anywhere on Rivera's account.  Thus, Plaintiff was a stranger to an already paid off account, an account that had been paid off five years before his dispute. Since Plaintiff was a stranger to the account, as noted above, Credit Acceptance could not disclose information to him. Additionally, Plaintiff's identity could not be verified by the driver's license and Social Security card he submitted because the information thereon was blacked out. Walker Aff. ¶ 8; Exhibit A-4.

Credit Acceptance made multiple attempts to verify the information. It performed a searching inquiry into the dispute which was more than a cursory review.  Accordingly, Plaintiff has failed to meet the required elements to prevail under 15 U.S.C. § 1681s-2(b)(1)(A), and Credit Acceptance is entitled to summary judgment on this claim.

**II.      Credit Acceptance's Investigation Did Not Reveal Any Inaccurate Information, and it Therefore Was Not Required to Modify, Delete, or Block Any Information.**

Next, Plaintiff alleges that Credit Acceptance violated 15 U.S.C. § 1681s-2(b)(1)(E). 15 U.S.C. § 1681s-2(b)(1)(E). Plaintiff alleges that this statute "provides that if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified," the furnisher must modify, delete, or block that information.  Compl. at ¶ 119.

To prevail on this claim, Plaintiff must show similar elements as those under his first claim. More specifically, he must show that "(1) he or she notified the consumer reporting agency of the disputed information, (2) the credit reporting agency notified the defendant furnisher of the dispute, and (3) the furnisher then failed to investigate and modify the inaccurate information."

8

*Magruder v. Educational Systems Federal Credit Union*, 194 F.Supp.3d 386, 390 (D. Md. 2016). As noted above, Plaintiff cannot show the existence of the third element.

As noted above, Credit Acceptance performed an investigation that was more than merely a cursory review of its internal documents, resulting in the fact that its investigation was reasonable. Again, Credit Acceptance made attempted phone calls to the obligor on the account, Rivera. It was prohibited from sending the requested information (or any information about the debt) to Plaintiff as he was a stranger to the account. Thus, it did the investigation it was permitted to do, that is, it contacted Rivera and provided the requested information to the address on the account, as well as reviewing the account, seeing that it did not bear any of the usual hallmarks of an identity theft, and confirming that the information it reported was accurate. Walker Aff. ¶¶ 5-7 and 11; Exhibit A-3; Exhibit A-6.

There is no evidence to support that Credit Acceptance reported inaccurate or incomplete information. Credit Acceptance reported to credit reporting agencies that Rivera made every payment on time and in the correct amount. That information is indisputably accurate and complete. As all the information reported was accurate and complete, Credit Acceptance was not required to modify, delete, or block that information. Thus, because Plaintiff has failed to prove the elements necessary for this claim, Credit Acceptance is entitled to summary judgment on this claim.

### III. Plaintiff Has Not Suffered Actual Harm and Therefore Does Not Have Standing.

In addition to the above reasons why Credit Acceptance is entitled to summary judgment on Plaintiff's claims, it is important to note that Plaintiff does not have standing to pursue his claims, as he cannot prove he was damaged by Credit Acceptance's alleged conduct.

9

Plaintiff makes multiple claims of alleged actual damages including stress associated with multiple denials for personal loans, credit cards, and delays in applying for future lines of credit, reputational damages, and loss of opportunity and disadvantage in the workplace. Plaintiff's evidence of "damages" includes his wife to support his emotional damages claims, a loan origination document showing he was able to purchase a car, and a 2023 police report where Plaintiff informs the officer that he was denied a Habitat for Humanity home twelve years prior (or, in other words, in 2011, three years before the account at issue was even originated).

Article III of the Constitution requires that judicial power only extends where there is an active case or controversy. *Brown v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 704 F.Supp.3d 687, 695 (N.D. W.Va. 2023). A plaintiff establishes that they have standing to pursue their claims by showing, that there is an injury-in fact, causation, and redressability. *Id.* at 696. The Fourth Circuit has held that a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing he was injured by application of those provisions. *EQT Production Company v. Wender*, 191 F.Supp.3d 583, 590 (S.D. W. Va. 2016) (quotations omitted).

"To establish an injury-in-fact, a plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Brown*, 704 F.Supp.3d at 696.  The court will be required to examine the nature of the violation "to ensure that they raise a risk of harm." *Piper v. Meade & Associates, Inc.*, 282 F.Supp.3d 905, 910 (D. Md. 2017).  The Sixth Circuit has found that "a violation of the law that results in the dissemination of an objectively false report does not necessarily cause a concrete harm if the disclosure has no consequences for the consumer." *Thompson v. Equifax Information Services*, 441 F.Supp.3d 533, 542 (E.D. Mich. 2020).

Regarding the first element to show an injury-in-fact, Plaintiff has not suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent as opposed to being conjectural or hypothetical. Even if the information that Credit Acceptance reported about Rivera did make it to Plaintiff's credit report, that information was completely positive. There is no evidence to suggest that positive reporting would have caused Plaintiff a concrete, particularized, actual or imminent harm that is more than conjectural or hypothetical harm.

The second element, causation, requires the demonstration of a fairly traceable connection between the alleged injury-in-fact and the alleged conduct of the defendant. *Miller v. Dish Network*, 326 F.Supp.3d 51, 58 (E.D. Va. 2018). There is no evidence to suggest that any harm Plaintiff alleges was caused by the positive reporting of Credit Acceptance. In reality, this positive reporting would have boosted Plaintiff's credit score. Increasing Plaintiff's credit score would have only helped him. As noted above, Plaintiff's Complaint references multiple other accounts that he claims appear on his credit reports and that are not his, including Westlake, Carmax, Synchrony, and JPMorgan Chase. These accounts are critical. Plaintiff's credit reports contain negative information regarding (1) an account involving Resurgent/LVNV that is being reported as "in collections" and which has been noted as "placed for collections" and (2) an account involving IC Systems that has been reported for almost two years as being "in collections," "placed for collections," and "placed with a collection attorney." Plaintiff cannot determine how Credit Acceptance's reporting of a perfectly paid and timely closed account has caused him damages, especially in the face of these three delinquent accounts, especially without an expert witness.

Finally, redressability requires that it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief he seeks in bringing suit. *Miller*, 326 F.Supp.3d at 57. Typically, if a court were to find that Credit Acceptance did violate the FCRA, Plaintiff's damages

11

would be redressable by statutory damages. *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 629. However, as stated above, Plaintiff has not provided evidence to succeed under the FCRA. While courts have found the redressability element was met through the publication of negative information, there was no negative information published by Credit Acceptance. *Simmons v. TransUnion, LLC*, 712 F.Supp.3d 629, 634 (D. Md. 2024). It is speculative, at best, whether Plaintiff's alleged injuries will be remedied by this action. As noted above, Plaintiff alleges many accounts were opened without his knowledge.  Some of those accounts, not the one involving Credit Acceptance, involve negative reporting.  Even if the fully-positive information Credit Acceptance reported never existed, Plaintiff still would suffer whatever harm is created by the negative reporting of others.  Accordingly, he cannot satisfy the redressability element of showing an injury-in-fact.

Since Plaintiff cannot meet the required elements of Article III standing, his claims fail, and Credit Acceptance is entitled to summary judgment on those claims.

**CONCLUSION**

The Court should grant Credit Acceptance summary judgment on Plaintiff's claims. Plaintiff cannot show the required elements to prevail on those claims, and he lacks standing to even pursue them.  Thus, Credit Acceptance respectfully requests the Court grant it summary judgment in its favor on all claims and grant it such other relief as the Court deems appropriate.

Respectfully Submitted,

**CREDIT ACCEPTANCE CORPORATION**

*/s/ Nicholas P. Mooney II*
Nicholas P. Mooney II (WV State Bar #7204)
Taiesha K. Morgan (WV State Bar #14872)
Spilman, Thomas & Battle, PLLC
300 Kanawha Blvd., East
Charleston, West Virginia 25301

Telephone: 304-340-3800
nmooney@spilmanlaw.com
tmorgan@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING**

**EDWARD NESTOR,**

        **Plaintiff,**                              **Civil Action No. 5:25-cv-147**

**v.**                                           **Judge John Preston Bailey**

**CREDIT ACCEPTANCE CORPORATION,**

        **Defendant,**

**and**

**CREDIT ACCEPTANCE CORPORATION,**

        **Third-Party Plaintiff,**

**v.**

**EDWIN LINARES RIVERA,**

        **Third-Party Defendant.**

## CERTIFICATE OF SERVE

I, Nicholas P. Mooney II, counsel for defendant Credit Acceptance Corporation, do hereby certify that on this June 17, 2026, I filed ***Memorandum of Law in Support of Credit Acceptance Corporation's Motion for Summary Judgment***, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Anthony J. Majestro, Esq.
Graham B. Platz, Esq.
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite 807
Charleston, WV 25301

Leonard A. Bennett, Esq.
Mark C. Leffler, Esq.
Craig C. Marchiando, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
***Counsel for Plaintiff Edward Nestor***

Abel Pierre, Esq.
Law Office of Abel L. Pierre, PC
140 Broadway, 46th Floor
New York City, NY 10005

14

*/s/ Nicholas P. Mooney II*
Nicholas P. Mooney II (WV State Bar $7204)